<pre>
 1                  UNITED STATES DISTRICT COURT

 2                  WESTERN DISTRICT OF NEW YORK

 3

 4

 5  - - - - - - - - - - - - -X
    UNITED STATES OF AMERICA            16-CR-6063(G)
 6
    vs.
 7                                       Rochester, New York
    TONY IVEY,                           December 6, 2016
 8             Defendant.                3:38 p.m.
    - - - - - - - - - - - - - -X
 9

10

11                  TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE FRANK P. GERACI, JR.
12               UNITED STATES DISTRICT CHIEF JUDGE

13

14                  RICHARD S. HARTUNIAN  ESQ.
                    United States Attorney
15                  BY: GEOFFREY J.L. BROWN, ESQ.
                    Assistant United States Attorney
16                  100 South Clinton Street
                    Syracuse, New York 13261
17

18

19                  MARIANNE MARIANO, ESQ.
                    Federal Public Defender
20                  BY: ROBERT G. SMITH, ESQ.
                    Assistant Federal Public Defender
21                  28 East Main Street, Suite 400
                    Rochester, New York 14614
22                  Appearing on behalf of the Defendant

23  ALSO PRESENT:       Kerry Chartier, U.S. Probation Office

24  COURT REPORTER:     Christi A. Macri, FAPR-CRR
                        Kenneth B. Keating Federal Building
25                      100 State Street, Room 2120
                        Rochester, New York 14614
</pre>

1                          **P R O C E E D I N G S**

2                          \*          \*          \*

3          (**WHEREUPON**, the defendant is present).

4          **THE COURT:** Good afternoon.  Are you Tony Ivey?

03:38:59PM 5   **THE DEFENDANT:** Yes, sir.

6          **THE COURT:** You appear with your attorney Mr. Smith?

7          **THE DEFENDANT:** Yes, sir.

8          **THE COURT:** And, Mr. Brown, you appear on behalf of

9   the Government?

03:39:05PM 10   **MR. BROWN:** Yes, Your Honor.

11          **THE COURT:** Good afternoon.

12          **MR. BROWN:** Good afternoon.

13          **THE COURT:**  Welcome.

14          **MR. BROWN:** Thank you.

03:39:09PM 15   **THE COURT:** This matter's on for a potential plea.

16   Is your client ready to proceed?

17          **MR. SMITH:** Yes, he is, Your Honor.

18          **THE COURT:** Before I begin there are a couple of

19   preliminary issues that we need to deal with.  First of all,

03:39:20PM 20   there was an R and R that was issued by Judge Payson regarding

21   the defendant's competency to proceed.  She deemed that he was

22   competent after an examination and a report was received, and

23   I believe that there was no objection to that report.

24          Is that correct, Mr. Smith?

03:39:38PM 25   **MR. SMITH:** Yes, that is true, Your Honor.

3

1          **THE COURT:** By the Government as well?

2          **MR. BROWN:** Yes, Your Honor.

3          **THE COURT:** Okay.  Based upon that then the Court

4    will adopt the R and R of Judge Payson.

03:39:49PM 5          The other issue is regarding the defendant

6    foregoing any motions in this case.  Apparently no motions

7    were filed?

8          **MR. SMITH:** No motions filed, Your Honor.  And there

9    will be no motions prior to sentencing.  I have told my client

03:40:06PM 10   that I would make a motion after sentencing (sic) for his

11   release.

12          He has a brother that died and the wake is on

13   Friday and the funeral is on Saturday.  So I told him that I

14   would make a motion for his release after he takes the plea.

03:40:25PM 15          **THE COURT:** Okay.  Is that correct, Mr. Ivey?

16          **THE DEFENDANT:** Yes, sir.

17          **THE COURT:** You understand when you plead guilty,

18   you'll be giving up your right to make motions at this point,

19   except for a motion for bail, other motions related to the

03:40:39PM 20   plea or sentencing?

21          Do you understand that?

22          **THE DEFENDANT:** Yes.

23          **THE COURT:** Okay.  Mr. Ivey, I'm going to place you

24   under oath.  I'm going to asking you a series of questions.

03:40:51PM 25   If you fail to give any truthful testimony during the

1  questions, do you understand you could be charged with a

2  separate crime of perjury?

3           **THE DEFENDANT:** Yes.

4           **THE COURT:** Please place the defendant under oath.

03:41:02PM 5        (**WHEREUPON**, the defendant was sworn).

6           **THE COURT:** Mr. Ivey, do you understand if you make

7  any false statements, that those statements could be used

8  against you by the Government in a prosecution for perjury?

9           **THE DEFENDANT:** Yes.

03:41:19PM 10       **THE COURT:** Okay.  How old are you?

11          **THE DEFENDANT:** 53.

12          **THE COURT:** What's that?

13          **THE DEFENDANT:** 53.

14          **THE COURT:** 52?

03:41:30PM 15       **THE DEFENDANT:** 53.

16          **MR. SMITH:** 53, Your Honor.

17          **THE DEFENDANT:** I just had a birthday.

18          **THE COURT:** 53, okay.  How far did you go in school?

19          **THE DEFENDANT:** 8th grade, and a GED.

03:41:41PM 20       **THE COURT:** Okay.  Are you currently taking any

21  medications or drugs?

22          **THE DEFENDANT:** Yes.

23          **THE COURT:** What are you taking?

24          **THE DEFENDANT:** I take Prednisone, Lycinapro,

03:41:56PM 25  Gabapentin, and medication for my lupus and pain for my hip.

1      **THE COURT:** Okay.  Are you taking any mental health
2  medications?

3      **THE DEFENDANT:** Just Seroquel.

4      **THE COURT:** Okay.  Are any of these medications
03:42:17PM 5  affecting your ability to understand anything that's occurring
6  today?

7      **THE DEFENDANT:** No.

8      **THE COURT:** Do you understand everything?

9      **THE DEFENDANT:** Yes.

03:42:22PM 10      **THE COURT:** Okay.  Do you have any other health or
11  medical condition affecting your ability to understand
12  anything that's occurring today?

13      **THE DEFENDANT:** No.

14      **THE COURT:** Okay.  Is anybody forcing you, coercing
03:42:33PM 15  you or threatening you to enter a plea of guilty?

16      **THE DEFENDANT:** No.

17      **THE COURT:** Have you had a chance to review this
18  matter prior to today with your attorney Mr. Smith?

19      **THE DEFENDANT:** Yes.

03:42:43PM 20      **THE COURT:** Are you satisfied with his
21  representations?

22      **THE DEFENDANT:** Yes.

23      **THE COURT:** Do you understand that you have a right
24  to an attorney throughout these proceedings right through the
03:42:52PM 25  time of sentencing?

1    **THE DEFENDANT:** Yes.

2    **THE COURT:** Do you understand you have a right to

3  proceed to trial on this matter?

4    **THE DEFENDANT:** Yes.

03:42:58PM 5    **THE COURT:** That when you plead guilty, do you

6  understand you're giving up your right to either trial by jury

7  or trial by judge?

8    **THE DEFENDANT:** Yes.

9    **THE COURT:** That you're giving up your right to

03:43:08PM 10  allow your attorney to cross-examine witnesses on your behalf?

11    **THE DEFENDANT:** Yes.

12    **THE COURT:** That you're giving up your right to have

13  the Government prove this case against you beyond a reasonable

14  doubt?

03:43:18PM 15    **THE DEFENDANT:** Yes.

16    **THE COURT:** And if the matter went to trial, do you

17  understand that you cannot be compelled to testify or present

18  any evidence?

19    **THE DEFENDANT:** Yes.

03:43:26PM 20    **THE COURT:** That the Court would instruct the jury

21  if there was a trial that you have no burden, that the burden

22  rests with the Government to prove this case beyond a

23  reasonable doubt.

24    Do you understand that?

03:43:37PM 25    **THE DEFENDANT:** Yes.

1         **THE COURT:** Okay.  Do you understand when you plead

2  guilty, that's the same as if we did have a trial and either a

3  jury or judge came back with a verdict of guilty?

4         **THE DEFENDANT:** Yes.

03:43:46PM 5         **THE COURT:** Do you understand you can persist or

6  continue in your plea of not guilty?

7         **THE DEFENDANT:** Yes.

8         **THE COURT:** Mr. Ivey, at this point I'm going to go

9  through this.  It's not a plea agreement, it's called a

03:44:05PM 10  "Pimentel statement" regarding the parameters of this charge.

11         I'm going to review with you the potential

12  sentences here, the elements of the charge and also the

13  factual basis for this particular plea.

14         Do you understand that you would be pleading guilty

03:44:22PM 15  to a one count indictment?

16         **THE DEFENDANT:** Yes.

17         **THE COURT:** That charges you with threatening to

18  kill a federal prosecutor?

19         **THE DEFENDANT:** Yes.

03:44:35PM 20         **THE COURT:** Do you understand that?  And do you

21  understand that charge carries a maximum term of 10 years

22  imprisonment?

23         **THE DEFENDANT:** Yes.

24         **THE COURT:** A fine of up to $250,000?

03:44:46PM 25         **THE DEFENDANT:** Yes.

8

1          **THE COURT:** It carries a period of supervised

2   release of up to three years.

3          Do you understand that?

4          **THE DEFENDANT:** Yes.

03:44:55PM 5          **THE COURT:** Do you understand that if you were

6   sentenced to a period of supervised release and you violated

7   the conditions of supervised release, that you could receive a

8   period of imprisonment of two years without receiving credit

9   for the time you already served on supervised release?

03:45:11PM 10          **THE DEFENDANT:** Yes.

11          **THE COURT:** Do you understand this would require the

12   payment of a special assessment in the amount of $100?

13          **THE DEFENDANT:** Yes.

14          **THE COURT:** All right. Next I'm going to discuss

03:45:24PM 15   with you the elements of this charge.  This is what the

16   Government would have to prove beyond a reasonable doubt if

17   the matter went to trial.

18          First, the Government would have to prove that you

19   as the defendant threatened to assault and murder a federal

03:45:40PM 20   law enforcement officer, specifically in this case an

21   Assistant United States Attorney.

22          Do you understand that element?

23          **THE DEFENDANT:** Yes.

24          **THE COURT:** And that that individual, the Assistant

03:45:54PM 25   United States Attorney, is an official whose killing would be

1    a crime under United States Code.

2              Do you understand that?

3              **THE DEFENDANT:** Yes.

4              **THE COURT:** Second, the Government would have to

03:46:03PM 5    prove that with the intent to impede, intimidate or interfere

6    with such official while that official was engaged in the

7    performance of official duties.

8              Do you understand that?

9              **THE DEFENDANT:** Yes.

03:46:17PM 10            **THE COURT:** And that you also threatened this

11   individual with the intent to retaliate against such official,

12   the Assistant United States Attorney, on account of the

13   performance of that official's duties.

14             Do you understand that?

03:46:33PM 15           **THE DEFENDANT:** Yes.

16             **THE COURT:** And that you made statements intending

17   to be a threat or with knowledge that the statement would be

18   viewed as a threat.

19             Do you understand that?

03:46:46PM 20           **THE DEFENDANT:** Yes.

21             **THE COURT:** So the Government would have to prove

22   all those elements beyond a reasonable doubt if the matter

23   went to trial before you could be found guilty.

24             Do you understand that?

03:46:54PM 25           **THE DEFENDANT:** Yes.

1    **THE COURT:** Okay.  Next I'm going to discuss with

2    you the factual basis for this plea.  This indicates on

3    June 14th, 2016, you called the United States Attorney's

4    Office in Rochester, New York.

03:47:07PM 5    Is that correct?

6    **THE DEFENDANT:** Yes.

7    **THE COURT:** And you called that office two times on

8    that date.

9    Is that right?

03:47:14PM 10    **THE DEFENDANT:** Yes.

11    **THE COURT:** And who did you talk to?

12    **THE DEFENDANT:** An Assistant U.S. Attorney.

13    **THE COURT:** Okay.  Did he go by the name of Craig

14    Gestring?

03:47:27PM 15    **THE DEFENDANT:** Probably.

16    **THE COURT:** Do you know what his name was?

17    **THE DEFENDANT:** He probably mentioned it, but I

18    don't remember it.

19    **THE COURT:** You knew the person you were talking to

03:47:36PM 20    was an Assistant United States Attorney?

21    **THE DEFENDANT:** Yes.

22    **THE COURT:** And why did you call him?

23    **THE DEFENDANT:** To question my -- a court order

24    process of housing violation.

03:47:49PM 25    **THE COURT:** So you had a question regarding

1  treatment you were receiving from the Rochester Housing

2  Authority.

3          Is that right?

4          **THE DEFENDANT:** Right.

03:47:55PM 5          **THE COURT:** And what did Mr. Gestring tell you?

6          **THE DEFENDANT:** Well, he was saying that he couldn't

7  say because it is -- he's not a lawyer in that sense.  He's a

8  U.S. Attorney.  And I was questioning him about the violation

9  of my civil rights to the court order that was by a city court

03:48:34PM 10 judge.

11          **THE COURT:** He told you he could not assist you in

12 this particular matter?

13          **THE DEFENDANT:** Right.

14          **THE COURT:** What did you do?

03:48:39PM 15          **THE DEFENDANT:** Well, I tried to go at it a

16 different way and he -- he still said that he couldn't assist,

17 and said that he could direct me to some more entity, but I

18 told him I already called them, to no avail.

19          **THE COURT:** What did you do?  Did you threaten him

03:49:08PM 20 after that?

21          **THE DEFENDANT:** I pretty much said, well, I am -- I

22 am willing to die for what I believe in.  Are you?  And to me

23 I thought that was a question.  I didn't think it was a threat

24 because I didn't -- I didn't intend it as a threat.

03:49:26PM 25          The reason I said, you know, my name is because

1    when -- I called him from my phone, I didn't try to block my

2    number.

3                 THE COURT: Well, did you mention having an assault

4    weapon?

03:49:39PM 5                 THE DEFENDANT: No.

6                 THE COURT: You didn't say that?

7                 THE DEFENDANT: Probably mention something about the

8    shooting that just had happened in Florida about an assault

9    weapon.

03:49:50PM 10                 THE COURT: But did you threaten to assault or

11   murder him with an assault weapon?

12                 THE DEFENDANT: No, because I don't have access to

13   such.

14                 THE COURT: Okay.  Did you threaten to assault or

03:50:00PM 15   murder him?

16                 THE DEFENDANT: No.

17                 THE COURT: Not at all?

18                 THE DEFENDANT: Like I said, that's the best thing I

19   said is, I said, well, then what happen if the person came

03:50:15PM 20   down there to your place of work with a automatic assault

21   rifle and then what?  They'll go to jail or be killed.

22                 And it's just a misinterpretation of words.

23                 THE COURT: Well, that's a problem then.  Are you

24   saying you did not intend to threaten him or threaten to kill

03:50:36PM 25   him?

1              **THE DEFENDANT:** Correct.

2              **THE COURT:** Okay.

3              **MR. BROWN:** Your Honor, if I could cover some other

4    statements that were made?

03:50:45PM 5              **THE COURT:** Sure.

6              **MR. BROWN:** From the conversations, the defendant

7    stated that is the shit that makes a motherfucker -- mimicking

8    a shooting noise -- start killing you motherfuckers because of

9    white racist motherfuckers like you.

03:51:01PM 10             He mentioned getting an assault rifle and getting

11   his own justice.

12             When he was apprehended later that day by the

13   U.S. Marshals he stated, you are the type of person that

14   provoke Orlando.  I wish I had a gun, I don't have access, but

03:51:16PM 15  if I got them, do that shit, implying that he would engage in

16   a mass shooting.

17             **THE COURT:** Is this a recorded conversation?

18             **MR. BROWN:** The recorded conversation aspect is the

19   statement that he is -- that AUSA bullshit just like the

03:51:35PM 20  racist motherfuckers.  Motherfucker, you know what my name is,

21   I'm not afraid of shit, I'm willing to die for my rights,

22   motherfucker, the fuck are you?

23             AUSA Gestring asked him not speak that way, which

24   the defendant responded that's the shit that makes a

03:51:49PM 25  motherfucker -- then he makes noise the sounds like

1   shooting -- start killing you motherfuckers because of white

2   racist motherfuckers like you.  That's the statement that's

3   recorded.

4           **THE COURT:** Okay.

03:52:01PM 5           **MR. BROWN:** That's what the tape says.

6           **MR. SMITH:** I was talking to my client, Your Honor.

7           **THE COURT:** Sure, go ahead, take your time.

8           **MR. SMITH:** That's what I -- I think Mr. Ivey is

9   willing to continue the colloquy, Your Honor.

03:52:39PM 10           **THE COURT:** Mr. Ivey, you heard what Mr. Brown just

11   said was on a recording --

12           **THE DEFENDANT:** Yes, sir.

13           **THE COURT:** -- of your conversation with

14   Mr. Gestring?

03:52:47PM 15           **THE DEFENDANT:** Yes, sir.

16           **THE COURT:** Okay.  Are those the words that he just

17   stated your words?

18           **THE DEFENDANT:** Yes.

19           **THE COURT:** You indicated that, in sum and

03:52:59PM 20   substance, that he was a racist and that -- I'm sorry, could

21   you just repeat some of that?

22           **MR. BROWN:** He's full of shit, just like the rest of

23   the racist motherfuckers.  Motherfucker, you know what my name

24   is.  I'm not afraid of shit.  I'm willing to die for my

03:53:19PM 25   rights, motherfucker, and fuck you, meaning are you.

         AUSA Gestring then asked him not to speak that way,
to which the defendant responded, that is the shit that makes
a motherfucker -- then a shooting noise -- start killing you
motherfuckers because of white racist motherfuckers like you.
Then he hung up.

         THE COURT: Did you indicate to Mr. Gestring as
stated by Mr. Brown in this conversation that you were ready
to die and asked him if he was as well?

         THE DEFENDANT: Yes.

         THE COURT: And was that to convey a threat to him
that he could be subject to an assault by you?

         THE DEFENDANT: No.

         THE COURT: No? Well, what were you saying this for?

         THE DEFENDANT: I was saying it, for example, like
Martin Luther King, he died for it, his civil rights, for what
he believed in, right?

         So my issue is about the court order, that if --
the court orders says I don't owe Rochester Housing zero.  So
then why is Rochester Housing allow to -- it is overrule a
court order and does not read Section 8 and claim I still owe
them when a judge already said I do not.

         THE COURT: Go ahead, speak to your client.

         THE DEFENDANT: Now, in -- in -- in the course of
the conversation I can see how it is that the assistant
attorney interpreted it as a threat and, therefore, it is --

1   it was bad speaking on my part.

2         THE COURT: Well, the problem is were you intending

3   to threaten him at least?

4         THE DEFENDANT: No, sir, not really.

03:55:45PM 5         THE COURT: Okay.

6         THE DEFENDANT: I was just upset because he wasn't

7   trying to hear it is what I was saying.

8         THE COURT: Right, you were upset with him because

9   he wasn't responding to you and your concern about the

03:55:59PM 10   treatment you were receiving from the Rochester Housing

11   Authority, correct?

12         THE DEFENDANT: Right.

13         THE COURT: Okay.  And so you in turn talked to him

14   about being ready to die?

03:56:10PM 15         THE DEFENDANT: Because I've been waiting for this

16   program for six years.  I live in a rooming house or was

17   living in a rooming house.  I need surgery of a hip

18   replacement and -- and I can't get aid while living in a

19   rooming house.

03:56:27PM 20         So, therefore, it is -- I have kept putting it off

21   and putting it off and now my number came up and they're gonna

22   throw in a monkey wrench as the judge made a court order that

23   I don't owe them zero.  So this is why because I was calling

24   to state to the attorney to begin with to find out where are

03:56:51PM 25   my civil rights at.

17

1          **THE COURT:** Okay, why did you mention an assault

2 rifle?

3          **THE DEFENDANT:** Just angry at the -- the way the

4 conversation was going downhill.

03:57:01PM 5          **THE COURT:** At Mr. Gestring?

6          **THE DEFENDANT:** Yes, pretty much.

7          **THE COURT:** All right. So did you mention the

8 assault rifle in order to put him in fear?

9          **THE DEFENDANT:** I guess, yes, sir.

03:57:11PM 10          **THE COURT:** You guess or is that what you -- why you

11 did it?  It just didn't come out of the blue.

12          **THE DEFENDANT:** It just happened.  Just got -- just

13 caught up in the moment.

14          **THE COURT:** Okay.  And you threatened to use an

03:57:24PM 15 assault rifle on him?

16          **THE DEFENDANT:** Yeah, yes, sir.

17          **THE COURT:** Okay.  And did you understand that as a

18 threat to him?

19          **THE DEFENDANT:** Not then I didn't, but now I do.

03:57:36PM 20          **THE COURT:** Okay.  And you understand how he would

21 see that as a threat to his life as well?

22          **THE DEFENDANT:** Yes.

23          **THE COURT:** The fact that you said you're ready to

24 die and asked him if he was ready to die?

03:57:51PM 25          **THE DEFENDANT:** Yes.

1          **THE COURT:** The statements that were read by

2    Mr. Brown, were those statements you made?

3          **THE DEFENDANT:** Yes, sir.

4          **THE COURT:** It was accurate what he read into the

03:58:02PM 5    record here?

6          **THE DEFENDANT:** Yes.

7          **THE COURT:** Okay.  And you understood Mr. Gestring

8    at the time he was with you on the phone was an Assistant

9    United States Attorney, and that from what your understanding

03:58:16PM 10   is, he was performing his duties as an Assistant United States

11   Attorney?

12         **THE DEFENDANT:** Yes.

13         **THE COURT:** Okay.  Are you satisfied that that's

14   sufficient?

03:58:27PM 15         **MR. BROWN:** I think it qualifies.  I think it's --

16   it has to be with knowledge the statement would be viewed as a

17   threat, and I think if Mr. Ivey can equivocate on that point,

18   which I think he just did, then I think we're okay under --

19         **THE COURT:** You believe that that threat would be

03:58:50PM 20   perceived certainly by Mr. Gestring as a threat that you were

21   going to kill him or harm him?

22         **THE DEFENDANT:** Later on once I heard the knocking

23   on the door, I realized what it was, but like I just got

24   caught up in the moment because I was so anticipating this

03:59:12PM 25   Section 8.

1          THE COURT: I understand that.  But what I'm saying

2    is those statements you made that were read by Mr. Brown --

3          THE DEFENDANT: Right.

4          THE COURT: -- regarding being ready to die and

03:59:21PM 5    asking him if he was ready to die, you mentioned an assault

6    weapon, you understood that that would be perceived by

7    Mr. Gestring as a threat.

8          Is that right?

9          THE DEFENDANT: Yes, sir.

03:59:31PM 10          THE COURT: That's why you said that because you

11   were angry because he wasn't responding to your inquiry about

12   the Rochester Housing Authority?

13          THE DEFENDANT: Yes, sir.

14          THE COURT: Okay, I think that's sufficient.

03:59:56PM 15          Next, Mr. Ivey, I'm going to discuss with you the

16   sentencing guidelines.  The Court must consider the

17   guidelines, but I'm not bound by those.

18          Do you understand that?

19          THE DEFENDANT: Yes.

04:00:06PM 20          THE COURT: Do you understand this carries what's

21   called a base offense level of 12?

22          THE DEFENDANT: Yes.

23          THE COURT: And there's a two level upward

24   adjustment of that based upon the fact that there was an

04:00:17PM 25   official victim in this case, specifically an Assistant United

1  States Attorney, Mr. Gestring.

2            Do you understand that?

3            **THE DEFENDANT:** Yes.

4            **THE COURT:** So when the Court combines the --

04:00:28PM 5            **MR. BROWN:** Your Honor, I believe that's three

6  points.

7            **THE COURT:** Three.  Did I say two?

8            **MR. BROWN:** Yeah.

9            **THE COURT:** Three level upward adjustment.

04:00:32PM 10           Is that correct?

11           **THE DEFENDANT:** Yes.

12           **THE COURT:** Okay.  Do you understand that then

13  results in an adjusted offense level of 15, which is 12 plus

14  three?

04:00:44PM 15           **THE DEFENDANT:** Yes.

16           **THE COURT:** He'd only be eligible for a two level

17  downward adjustment?

18           **MR. BROWN:** Correct.  There's no other enhancements

19  that apply, it would be two points off.

04:00:54PM 20           **THE COURT:** You would receive a two level downward

21  adjustment for your acceptance of responsibility by your plea

22  of guilty, your acknowledgment of your involvement in this

23  offense, which would result in a total offense level of 13.

24           Do you understand that?

04:01:05PM 25           **THE DEFENDANT:** Yes.

1          **THE COURT:** My understanding your criminal history

2    category is a level II.  Did you discuss that with Mr. Smith?

3          **THE DEFENDANT:** Yes.

4          **THE COURT:** And when the Court then combines the

04:01:21PM 5    total offense level of 13 with a criminal history category of

6    II, do you understand the period of imprisonment under the

7    guidelines would be a term of imprisonment between 15 months

8    and 21 months?

9          **THE DEFENDANT:** Yes.

04:01:35PM 10         **THE COURT:** Is there anything further?

11         **MR. BROWN:** No, Your Honor.

12         **THE COURT:** Okay.

13         **MR. SMITH:** I believe that's enough for a plea, Your

14   Honor.

04:02:05PM 15         **THE COURT:** Okay.  Mr. Ivey, I'm going to ask you at

16   this time, I'm going to read to you Count 1 and I'm going to

17   ask you at the end how you plead to that count, either guilty

18   or not guilty.

19              Count 1 of this indictment charges you with

04:02:18PM 20   threatening to kill a federal prosecutor.  It states on or

21   about June 14th, 2016, in Monroe County, within the Western

22   District of New York, that you the defendant, Tony Ivey, did

23   threaten to assault and murder a federal law enforcement

24   officer, an official, whose killing would be a crime under the

04:02:44PM 25   United States Code, with the intent to impede, intimidate or

1  interfere with such law enforcement officer while engaging in

2  the performance of his official duties with the intent to

3  retaliate against such law enforcement official on account of

4  the performance of his official duties in that you, Tony Ivey,

04:03:11PM 5  threatened to kill an Assistant United States Attorney while

6  he was engaged in the performance of his official duties.

7  I'll ask you how you plead to threatening to kill a

8  federal prosecutor, guilty or not guilty?

9  **THE DEFENDANT:** Guilty.

04:03:25PM 10  **THE COURT:** The defendant's 53 years old.  Has an

11  8th grade education, also secured later a GED.

12  Indicates that he is taking some medications for a

13  variety of conditions, including mental health conditions and

14  other medical conditions, but none of those medications effect

04:03:47PM 15  his ability to understand anything that was occurring today.

16  That nobody's threatening him, forcing him or

17  coercing him to enter a plea of guilty.

18  That he's been represented by Mr. Smith.  He's

19  satisfied with Mr. Smith's representations.  He understands he

04:04:04PM 20  has a right to counsel throughout these proceedings right

21  through the time of sentencing.

22  He understands he has a right to go to trial, and

23  that by pleading guilty he was giving up that right, giving up

24  his right to allow his attorney to cross-examine witnesses,

04:04:20PM 25  giving up his right to have the Government prove this case

against him beyond a reasonable doubt.  He is giving up his

right to testify or present evidence, if he elected to do so.

He understands if the matter did proceed to trial, a jury would be advised that he has no burden.  He cannot be compelled to testify or present any evidence.

That a plea of guilty has the same force and effect as if there was a trial by a jury or a judge, and a jury or judge returned a verdict of guilty.

The defendant understood the maximum penalty in this case regarding a charge of threatening to kill a federal prosecutor involves a term of imprisonment of up to 10 years, a fine of up to $250,000, and a period of supervised release of up to three years.

If he violates the conditions of supervised release, he could receive a sentence of up to two years imprisonment without receiving credit for the time he served on supervised release.

There's also a $100 special assessment that must be paid in this case.

He understood the elements of this charge that would need to be proven beyond a reasonable doubt if the matter did proceed to trial.

The Government would have to prove that the defendant threatened to assault or murder a federal law enforcement officer, specifically an Assistant United States

1   Attorney.

2              That he had the intent to impede, intimidate or

3   interfere with such official while engaged in the performance

4   of his official duties or with the intent to retaliate against

04:06:01PM 5   such official on account of the performance of his official

6   duties.

7              That the defendant made the statements intending

8   them to be a threat or with knowledge that the statement would

9   be viewed as a threat.

04:06:16PM 10             The defendant acknowledged that he on June 14th,

11  2016, called the United States Attorney's Office in Rochester,

12  New York on two separate occasions, spoke to Assistant United

13  States Attorney Craig Gestring to complain about treatment he

14  was receiving at the Rochester Housing Authority.

04:06:35PM 15             That Mr. Gestring informed him that this was not

16  within the scope of his responsibilities.  That the defendant

17  then indicated that -- he threatened to assault Assistant

18  United States Attorney Gestring using various language,

19  including stating that he was ready to die for this, and asked

04:06:57PM 20  Mr. Gestring if he was ready to die for that.

21             Also in a recorded conversation he did discuss the

22  use of an assault weapon and other shootings with assault

23  weapons.

24             That his statements were made with the intent to

04:07:13PM 25  intimidate, impede, or interfere with Mr. Gestring, who was

1   engaged in the performance of his official duties or with the

2   intent to retaliate against Mr. Gestring on account of the

3   performance of his official duties.

4           That the statements he made intending them to be a

04:07:32PM 5   threat or with knowledge that his statements would be viewed

6   as a threat.

7           The defendant indicated he understood the

8   calculation of the sentencing guidelines.  That this charge

9   carries a base offense level of 12.

04:07:47PM 10          There is a three level upward adjustment for the

11  victim being an official.

12          That he would receive a two level downward

13  adjustment for his acceptance of responsibility, resulting in

14  a total offense level of 13.

04:08:01PM 15          His criminal history category is II; when combined

16  with a total offense level of 13, results in a period of

17  imprisonment under the guidelines of a term of 15 to 21

18  months.

19          The defendant indicated he understood both the

04:08:21PM 20  elements of the charge, the calculation of the sentencing

21  guidelines as well.

22          And he did articulate a factual basis for the plea

23  to the one count indictment charging him with threatening to

24  kill a federal prosecutor.

04:08:37PM 25          The Court finds based upon his responses, the plea

1 is in all respects knowing and voluntary . Therefore, the

2 Court does accept the plea of guilty to the one count

3 indictment charging the defendant with threatening to kill a

4 federal prosecutor.

04:08:53PM 5          Date for sentencing, March 7th, put the matter on

6 for March 7th, 3:30 for sentencing.

7          **MR. SMITH:** Your Honor --

8          **THE COURT:** You have an application?

9          **MR. SMITH:** Yes.  Mr. Ivey is -- he had a number of

04:09:22PM 10 brothers and sisters, but he had one brother that died and the

11 wake is Saturday -- I'm sorry, the wake is Friday and the

12 funeral is Saturday and should be over with by 6 o'clock.

13          I would ask that Mr. Ivey be released so he can

14 attend the funeral and the wake with his family.  His brother,

04:09:45PM 15 as I mentioned, has died, although his mother is still alive

16 and still in town.  I would ask that he be allowed to attend

17 both those events.

18          I do know that he's held off in Ohio, so I had

19 asked that his girlfriend come here and have clothes with him

04:10:12PM 20 so that if the Court was going to, they could release him

21 today and then he could go and see the wake and the funeral

22 and he then could come back at 6 o'clock on Saturday and

23 surrender to the Monroe County Jail.

24          His girlfriend is a woman by the name of Rosemary

04:10:35PM 25 Speed, who also is a federal employee.  She works at the

1  United States Tax Bureau in Buffalo.

2          **THE COURT:** Okay.  Has Probation interviewed the

3  defendant?

4          **MS. CHARTIER:**  Yes, we have, Judge.

04:10:50PM 5          **THE COURT:** Do you have a recommendation?

6          **MS. CHARTIER:**  Judge, Camaryn Buckner from my

7  office had interviewed him previously.  Her recommendation was

8  that Mr. Ivey remain in custody pending disposition of this

9  case.

04:11:12PM 10          I have a copy of the bail report if Your Honor

11  would like to see it?

12          **THE COURT:** Sure.  Government want to be heard?

13          **MR. BROWN:** Your Honor, the Government with respect

14  to this would rest on the arguments that it set forth at the

04:13:39PM 15  detention hearing regarding his danger to the community, which

16  were fairly lengthy regarding the charges, the criminal

17  history at issue here, the conduct post-arrest and the general

18  difficulty in attending even court sessions with respect to

19  this proceeding, including last week, I think, sets a fairly

04:14:06PM 20  difficult standard for the Court at this point with respect to

21  him being released at this time.

22          I have in previous cases seen cases where if the

23  defendant is willing to pay for a United States Marshal escort

24  to and from the funeral, that has, in fact, been allowed in

04:14:24PM 25  other cases.  The cases that I was aware of that happening

1   were not similarly situated to this, though, with respect to

2   the violence.

3               **MR. SMITH:** If I can just be heard, Your Honor?

4               **THE COURT:** Sure.

04:14:34PM 5   **MR. SMITH:** Certainly everything that Mr. Brown said

6   is true and everything that happened up until Mr. Ivey was

7   evaluated was true, and I don't think anybody is trying to say

8   that person that was evaluated before that evaluation

9   certainly should not be released.

04:14:55PM 10      But after the evaluation, Mr. Ivey has kind of come

11  around and right now looks like he is in a much better

12  condition probably because of the medicine, the Seroquel he's

13  taking and some of the other medicine that he has for his

14  various hips and things.

04:15:14PM 15      And he just is better now than he was then.  And

16  since he is going to have to be out in the community sooner or

17  later, even if they Court went with the upward adjustment or

18  high end at 21 months, that would sooner or later be

19  Mr. Ivey's out in the community.

04:15:33PM 20      So I would think that maybe if you could let him

21  out for the wake and the funeral, it would be a chance for him

22  to show that he is not the same person that obviously the

23  Court is aware of, and I would urge the Court to release him

24  for just that period of time.

04:15:57PM 25      And also would be quite a bit for Mr. Ivey to see

1  his family.

2  **THE COURT:** Okay, thank you.

3  The Court's had the opportunity to review the

4  Probation report regarding potential release in this case.

04:16:14PM 5  The defendant has a very extensive history of either bench

6  warrants and/or violations of probation or parole going back

7  to 1985 where probation was violated.

8  In 1989 he had a parole violation and parole was

9  revoked.

04:16:36PM 10  Bench warrant in 1991; a second bench warrant also

11  issued in 1991; a bench warrant issued in 1994; bench warrant

12  issued in 1998 -- two separate bench warrants on that

13  particular occasion.

14  In addition, the defendant has an assault second

04:17:10PM 15  felony conviction, sentenced to four years, was paroled,

16  parole was ultimately violated and received revocation of

17  parole as well on that occasion.

18  The defendant has a mental health history of

19  violent behavior history, history of assaults.

04:17:39PM 20  This case obviously is a very serious matter.

21  Based upon that, the Court finds that there is no basis to

22  release the defendant.  He presents both a risk to the

23  community as well as a risk of flight, and based upon that the

24  application for his release pending sentencing is denied.

04:18:02PM 25  Now, if there's some provision that can be made for

1  him to attend a wake or a funeral, you might have to check

2  with the Marshal's Service on that, but other than that, I'm

3  certainly not going to release him short of that, okay?

4          **MR. SMITH:** Okay, thank you.

04:18:15PM 5          **THE COURT:** Thank you.

6          **MR. BROWN:** Thank you, Your Honor.

7          (**WHEREUPON**, the proceedings adjourned at 4:18 p.m.)

8                    *   *   *

9                    <u>**CERTIFICATE OF REPORTER**</u>

10

11          In accordance with 28, U.S.C., 753(b), I certify that

12  these original notes are a true and correct record of

13  proceedings in the United States District Court for the

14  Western District of New York before the Honorable Frank P.

15  Geraci, Jr. on December 6th, 2016.

16

17  <u>S/ Christi A. Macri</u>

18  Christi A. Macri, FAPR-CRR
    Official Court Reporter

19

20

21

22

23

24

25